Cipriano **GONZALES**, Appellant,

v.

**The STATE of Texas**, Appellee.

No. 41950.

Court of Criminal Appeals of Texas.

April 23, 1969.

Rehearing Denied June 18, 1969.

Murray J. Howze, Monahans, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is cattle theft; the punishment, assessed by the court after a jury verdict of guilty, 3 years' confinement in the Texas Department of Corrections.

Appellant's sole ground of error is that the trial court erred in refusing to instruct the jury that the State's witnesses, Benino and Narcissa Renteria, were accomplice witnesses as a matter of law.

Orville Eugene Hancock testified that while driving on a road seven or eight miles northwest of Grandfalls, Texas, on the afternoon of January 17, 1967, he observed three Latin American males near a red Corvair automobile and the black leg of a calf sticking out from a tarp in front

of the car; that the cows in a pasture on his right were "all milling around and excited"; that after a quarter of a mile he turned around and upon his return discovered the tarp and calf had been placed in the luggage compartment under the hood of the Corvair; that he was not able to identify any of the men or obtain the car's license number; that he stopped at the first house to telephone "the law" and while there the red car passed with its hood partially opened headed in the direction of Grandfalls.

S. S. Patterson, at whose house Hancock stopped, related that on his way home that afternoon he had passed a red car with its hood not shut.

Other State evidence reveals that later the same day a red Chevrolet Corvair automobile, registered to appellant, was found parked in the front of the Grandfalls Post Office. An examination of the luggage compartment revealed some black hair and a few blood spots though it had been recently washed out. The tire tracks discovered at the purported theft scene and subsequently at the Renteria home matched the tires on appellant's car. The following day the heads and hides of two black calves were found buried in the Renteria's yard. These white spotted heads and black hides (one with a brand) were identified as belonging to the two missing calves by their owner, E. J. Harrison, who related he had not given anyone permission to take his calves. A veterinarian testified each calf had been shot in the head with a small caliber bullet. A search on January 18, 1967, of the Renteria house in Grandfalls with Mrs. Renteria's consent revealed spots of blood and tallow in the bathtub and other areas of the house and fresh meat in the refrigerator. A .22 caliber rifle was also discovered. The bullets it contained were similar to the .22 caliber bullets and spent shells found at the purported theft scene.

Narcissa Renteria, sister of the appellant, testified appellant had butchered two calves in her bathroom in the late afternoon or evening of January 17, 1967; that the appellant informed her he purchased such calves; that her 17-year-old nephew washed out the red car and that at appellant's direction she drove it to and parked it in front of the Grandfalls Post Office where she locked it and took the keys; that appellant was permitted to use the Renteria automobile to haul the meat away; that he gave them some ribs which the officers found in the refrigerator; that she and her husband cleaned up their bathroom and buried the heads and hides of two calves in their yard in the early morning hours; that appellant left his .22 caliber rifle at their home; that she voluntarily consented to the search of her house and yard.

Benino Renteria, husband of Narcissa, testified that he arrived home from work at 6 o'clock p.m. on January 17, 1967, and found appellant there; that the red car was not there and the meat had already been loaded into his car in the garage; that they received "just a little piece" of the meat (ribs); that he assisted in cleaning the bathroom that night and burying the heads and hides since they did not have any way to haul them off; that appellant had told him the calves had been purchased and he believed the appellant. He denied being one of the three men seen by the witness Hancock or knowing who could have been with the appellant at that time. He named the men with whom he had worked all day.

A stipulation was entered that the indictment was returned on February 21, 1967, and that peace officers were unable to locate the appellant because he "was out of the jurisdiction of the court" until his arrest at his father's home in Pecos approximately four weeks before trial (February 28, 1968).

Appellant's only witness was his father who testified appellant was married, had six children and had never been convicted of a felony.

It is appellant's contention that the trial court should have peremptorily instructed the jury that the Renterias were accomplice

witnesses as a matter of law rather than submitting the matter to the jury as a fact issue.

It appears well settled that "[w]hen it is a question as to whether an inculpatory witness is an accomplice, it is proper to leave that issue to the jury, under instructions defining the term 'accomplice' and applying the law to the facts bearing upon that issue." 2 Branch's Anno.P.C., 2nd ed., Sec. 741, p. 39. See also Silba v. State, 161 Tex.Cr.R. 135, 275 S.W.2d 108.

In Lopez v. State, 92 Tex.Cr.R. 97, 242 S.W. 212, it was said:

"It appears to have been held many times by this court that where there is any doubt as to the fact that a given witness is an accomplice, and this issue is submitted to the jury for their determination, this is sufficient even though the evidence appears largely to preponderate in favor of the fact that such witness is an accomplice."

"It is not always reversible error to leave it to the jury to determine whether a witness is an accomplice although such fact may be apparent." 2 Branch's Anno.P.C., 2nd ed., Sec. 741, p. 38.

■ Where, however, there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law the court is under a duty to so instruct the jury. His failure to do so may constitute reversible error. 24 Tex. Jur.2d, Evidence, Sec. 691, pp. 314, 317.

In 2 Branch's Anno.P.C., 2nd ed., Sec. 741, it is said:

"Where there is no doubt that the inculpatory witness is an accomplice, the court should charge the jury peremptorily that such witness is an accomplice. However, it is not always reversible error to leave it to the jury to determine whether a witness is an accomplice although such fact be apparent, and this is particularly true when the witness' testimony is not essential to the conviction or

is not the sole corroboration of the testimony of another accomplice witness." Citing Nisbet v. State, 170 Tex.Cr.R. 1, 336 S.W.2d 142, cert. den. 363 U.S. 829, 80 S.Ct. 1601, 4 L.Ed.2d 1524.

This rule was explained in part by Bohannon v. State, 84 Tex.Cr.R. 8, 204 S.W. 1165, as follows:

"There are cases in which it has been decided that the fact that the court submitted to the jury the question as to whether a witness was or was not an accomplice was not reversible error, even though the evidence was such as to justify a charge that he was an accomplice as a matter of law. In these cases it will be found that there were facts proved or in evidence which would have authorized the jury to have concluded that the witness, if an accomplice, was sufficiently corroborated. These cases are distinguishable from this one by reason of the fact that here, if the jury determined that the prosecutrix was an accomplice, there is an absence of sufficient corroborating testimony to support the verdict. * * *"

In Harrell v. State, 107 Tex.Cr.R. 8, 294 S.W. 597, the failure to peremptorily instruct the jury that the witness was an accomplice witness was reversible error where the testimony of the witness was held essential to the conviction.

The distinction between the line of cases represented by Harrell v. State, supra, and the line of cases where the submission of the issue was held sufficient though the evidence made it apparent that the witness was in fact an accomplice witness was explicated in Cantrell v. State, 129 Tex.Cr.R. 240, 86 S.W.2d 777. See also Phillips v. State, 144 Tex.Cr.R. 566, 164 S.W.2d 844; Nisbet v. State, supra.

■ It appears from these cases that where the court submits to the jury the fact question of whether a certain State witness is an accomplice witness when the evidence was such as to justify a charge that such

witness was an accomplice as a matter of law, and proper objection is reserved, the error does not require reversal unless the testimony of the witness is essential to the State's case (a) because, if the witness is in fact an accomplice, there is no evidence to corroborate his testimony, or (b) because, without the testimony of the witness (whether he be an accomplice or not) there is insufficient evidence to support a conviction or (c) because it is the sole corroboration of the testimony of another accomplice witness.

In the case at bar the State vigorously urges there was conflict in the testimony and doubt existed as to whether the Renterias were accomplice witnesses and the trial court correctly submitted the fact issue to the jury under proper instructions, The State contends that this is the proper procedure "even though the evidence appears largely to preponderate in favor of the fact that such witness is an accomplice." Lopez v. State, supra.

■ As to the witness Benino Renteria, we think that sufficient doubt was raised as to his status to have justified the trial judge's action. As to the witness Narcissa Renteria, a closer question is presented despite her disclaim of any knowledge of the theft and her willingness to allow the officers to search. She was, however, not an admitted accomplice and we cannot conclude that the facts are such as to place beyond doubt that she was aware of the stolen character of the calves. Therefore, no reversible error appears for the trial court's failure to charge that the Renterias were accomplice witnesses as a matter of law.[1]

The three cases cited by appellant are distinguishable. In Ex parte Beloise, 118 Tex.Cr.R. 143, 42 S.W.2d 1031, the accomplice witness testified that he knowingly

received a part of the fruits of the crime. In Harrell v. State, supra, the witness knowingly lied and misled others in order to protect the defendant. In Smith v. State, 140 Tex.Cr.R. 301, 144 S.W.2d 894, the witness, a cab driver, testified that despite his initial lack of knowledge or suspicion that the property had been stolen, he came to the conclusion that his passengers, the defendant and his companion, were hauling stolen property. Despite his belated conclusion he continued to permit the use of his cab to haul the property and aided the defendant in delivering it to a purchaser.

■ Even if Narcissa Renteria be an accomplice witness as a matter of law, we do not conclude that her testimony is so essential to the State's case as to call for reversal under the rules discussed above.

Finding no reversible error, the judgment is affirmed.

---

1.  While not here raised by the State, there would be no merit in the contention that the Renterias' only guilty connection with the alleged crime would be as accessories and because of their relation-

ship to the appellant they could not be prosecuted as such, Article 78, Vernon's Ann.P.C., and therefore could be accomplice witnesses. See Turner v. State, 117 Tex.Cr.R. 434, 37 S.W.2d 747.