### FRANK HARRELL V. THE STATE.

#### No. 10750. Delivered May 4, 1927.

1.—Receiving and Concealing Stolen Property—Accomplice as Witness— Requested Charge—Erroneously Refused.

In this state a conviction of crime cannot be sustained on the testimony of an accomplice or accomplices unless same is corroborated. Where the evidence raises the issue of a witness being an accomplice it is the duty of the court, under appropriate instructions, to submit to the jury the determination of whether such witness is, or is not, an accomplice. If the facts clearly show that the witness is an accomplice then the jury should be charged, affirmatively, to that effect.

2.—Same—Continued.

In the instant case the proof very cogently established that the witness Johnson was an accomplice, and while the court submitted the issue to the jury to determine if such witness was an accomplice, it was reversible error to refuse appellant's requested charge to the effect that Johnson was in fact shown to be an accomplice. See Armstrong v. State, 33 Tex. Crim. Rep. 423, and other cases collated in Branch's Ann. Tex. P. C., 712.

Appeal from the District Court of Lynn County. Tried below before the Hon. Gordon B. McGuire, Judge.

Appeal from a conviction for receiving and concealing stolen property, penalty two years in the penitentiary.

The opinion states the case.

*Franklin D. Brown* of Tahoka; *Marvin B. Simpson* of Fort Worth, and *Lockhart & Garrard* of Lubbock, for appellant. On accomplice testimony, appellant cites: Chandler v. State, 232 S. W. 337; Blakely v. State, 7 S. W. 233; Dodson v. State, 6 S. W. 548; Freeman v. State, 11 Tex. Crim. App. 92, and Mercer v. State, 17 Tex. Crim. App. 452.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE. — The offense is fraudulently

receiving and concealing stolen property, punishment fixed at confinement in the penitentiary for a period of two years.

According to the testimony of Lonnie Williams, he missed a bay mule from his pasture. He later found it in Frank Harrell's lot. The witness had been informed that his mule was in Harrell's possession and went to Harrell's home pretending that he desired to purchase a mule. Harrell exhibited five mules, among which was the mule which Williams had lost. Harrell fixed the price upon that mule and another, offering to sell them. The mule's mane and tail had been sheared and its appearance changed since the witness had last seen it. Richard Johnson, a youth about eighteen years of age, had, together with Roy Harrell, a brother of the appellant, been employees of a man named Millwee, whose pasture was about a mile from the home of Williams. The witness had seen in Williams' pasture, among others, the mule in question. Roy Harrell afterwards had possession of the mule and requested the witness to take it to the home of his brother, Frank Harrell. The witness observed that the mule was branded and asked Roy Harrell what he would pay to have the mule taken to the home of his brother, and Roy replied that he would break the witness' neck if he did not do it. The witness and two others took the mule a distance of six miles to Frank Harrell's place. The witness disclaimed knowledge of the names of the boys who assisted him. When the mule was put on Frank Harrell's premises, the appellant was there. On the same day, Roy Harrell told the witness that he had bought the mule. Some two weeks later the witness, at the request of Roy Harrell, went to the home of Frank Harrell, where he saw the mule in the pasture of the latter and assisted in shearing the mule. This was done by Roy Harrell, Frank Harrell and the witness. After shearing the mule, Roy Harrell remarked that if the owner were to see the mule he would not know it. This remark was made in the presence of the appellant. The witness received no pay for his services. Roy Harrell had told the witness not to tell where the mule was, and when inquiry was made of him by the witness Millwee, the witness Johnson complied with the request of Roy Harrell and said that he did not know of the whereabouts of the mule, when as a matter of fact he did know where it was.

Millwee testified that the mule was in his pasture some two or three months. The witness was in Lubbock and knew nothing of the disappearance of the mule, but learned of its loss from Lonnie Williams. The witness knew that the mule belonged to Williams and told him that it was in the pasture of the witness. The witness had also told Roy Harrell and Johnson, the

negro boy, that the mule belonged to Lonnie Williams. The witness did not know that the mule was missing until Williams came for it.

We have failed to discern any cogent fact or circumstance upon which the jury might have determined that the witness Richard Johnson was not an accomplice. His testimony, as well as that of others, connects him so intimately with the criminal act as to render it imperative that before a conviction upon his testimony could stand, there must be other evidence complying with the requirements of the statute (Art. 718, C. C. P., 1925) inhibiting the conviction of one accused of a felony upon the uncorroborated testimony of an accomplice witness. See Chandler v. State, 89 Tex. Crim. Rep. 308; Harper v. State, 92 Tex. Crim. Rep. 657; Howard v. State, 92 Tex. Crim. Rep. 221; Meyer v. State, 282 S. W. 233. It is not in every case necessarily reversible error to fail to instruct the jury that as a matter of law the witness is an accomplice. However, when the evidence shows without controversy that the witness is an accomplice, it is frequently reversible error to fail to so inform the jury. See Armstrong v. State, 33 Tex. Crim. Rep. 423, and other cases collated in Branch's Ann. Tex. P. C., Sec. 712.

It is believed that the present case is one coming under a more strict application of the rule. The testimony of Johnson was essential to the conviction. That if the offense was committed he was a *particeps criminis* is conclusively shown. Under a charge properly instructing the jury that Johnson was an accomplice, they might have decided that there was no cogent corroborating evidence tending to connect the appellant with the commission of the offense. The trial court, in its charge, submitted to the jury the question whether Johnson was an accomplice and failed to amend its charge in response to the appellant's suggestion that the court should instruct the jury that Johnson was an accomplice.

From what has been said it follows that, in our opinion, in failing to amend its charge the court fell into error requiring a reversal of the judgment. It is so ordered.

*Reversed and remanded.*